UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE APPLICATION OF GUILLERMO LUIS TOFONI FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782 | Case No. 1:25-cv-01217-UNA |

DECLARATION OF FRANCISCO CASTEX
IN SUPPORT OF APPLICATION OF GUILLERMO LUIS TOFONI
FOR JUDICIAL ASSISTANCE IN OBTAINING EVIDENCE
FOR USE IN A FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782

I, Francisco Castex, declare under penalty of perjury as follows:

**Professional Background and Experience**

1. I am an attorney licensed to practice law in Argentina. I make this declaration in support of the Application of Guillermo Luis Tofoni for Judicial Assistance Pursuant to 28 U.S.C. § 1782.

2. I am a partner at the Argentine law firm Castex Pauls Abogados. I have more than 30 years of experience practicing law, as detailed in the CV attached hereto as Exhibit 1.

3. Unless otherwise noted, the information contained in this declaration is within my personal knowledge or was obtained from my review of documents or other reliable sources.

4. I am part of the legal team representing Mr. Tofoni with respect to his claims against the Argentine Football Association (*Asociación del Fútbol Argentino* or "AFA"). I represented Mr. Tofoni in a criminal case against AFA (case number CFP 1294/2023, before the Juzgado Criminal y Correccional 10), in which Mr. Tofoni was the *querellante* (private prosecutor), and I collaborate with his commercial attorneys in the related commercial case that is the basis for this Application.

**The Argentine Proceeding**

5. In November 2023, Mr. Tofoni initiated litigation in the first instance court that hears commercial matters (*Juzgado Nacional de Primera Instancia en lo Comercial Número 8*). The case is captioned *Tofoni, Guillermo Luis c/ Asociación de Futbol Argentino A.F.A. s/ Cumplimiento de Contrato (expediente CIV 084904/2023)* (the "Argentine Proceeding").

6. In the Argentine Proceeding, Mr. Tofoni alleges that he entered into a contract with AFA on May 4, 2021 (the "2021 Contract"), which gave him the exclusive rights to organize "friendly," or non-competitive, matches for the Argentine men's national soccer team, in exchange for 30% of match profits. Mr. Tofoni alleges that AFA breached the 2021 Contract by ignoring its contractual obligations to him and instead organizing friendly matches through other agents or otherwise without his involvement. He seeks enforcement of the 2021 Contract, as well as damages resulting from the lost opportunity to organize the matches and to receive his percentage of the profits.

7. AFA is the governing body of soccer in Argentina, and it manages the Argentine national soccer teams, as well as other soccer teams and leagues.

8. Mr. Tofoni is the only Match Agent in Argentina who is licensed by the International Federation of Association Football (*Fédération Internationale de Football Association* or "FIFA"). Match Agents are individuals who are registered with FIFA to organize matches between National Teams. Mr. Tofoni first obtained his license in 1999 and has organized hundreds of matches ever since.

9. Over the years, he entered into several contracts with AFA to organize friendly matches. The most recent of these contracts, executed by Mr. Tofoni and AFA on May 4, 2021 (the "2021 Contract"), gave Mr. Tofoni the exclusive rights to organize friendly matches for the Argentine men's national soccer team from November 1, 2022, until December 31, 2030. In exchange for Mr. Tofoni's work to organize these matches, as well as his organizational,

2

lodging and transportation costs, Mr. Tofoni was to receive 30% of the net match profits.

10. Subsequently, in December 2022, the Argentine national team won the World Cup tournament in Qatar. In addition, Lionel Messi, Argentina's star player and a worldwide sensation, decided to continue playing with the team. These developments made the team much more profitable than it had previously been, which is likely why AFA preferred to breach the 2021 Contract.

11. In January 2023, Mr. Tofoni learned that AFA had hired Prosport Live LLC, a Florida company, to organize two friendly matches for the Argentine national team. This was a breach of AFA's contract with Mr. Tofoni, who was to have the exclusive rights to organize friendly matches at that time. Mr. Tofoni confronted AFA about this contractual breach. However, AFA responded by denying the existence of the 2021 Contract. From that point, AFA continued to organize friendly matches without Mr. Tofoni. Mr. Tofoni is entitled to 30% of all friendly match profits, but he did not receive any compensation for these matches due to AFA's contractual breaches.

12. These friendly matches organized in breach of the 2021 Contract resulted in the payment of millions of dollars to AFA. The complaint alleges, for example, that AFA contracted with China Rainbow International Investment Co. and Shaanxi Provincial Sports Industry Group Co., Ltd., two Chinese companies, on May 12, 2023, for the organization of a friendly match in Beijing, China. The contract provided for the payment of US$ 7 million to Tourprodenter LLC, a Florida company ("Tourprodenter"), through its account at Synovus Bank (or, alternatively, First Commercial Bank, a division of Synovus Bank), a state-chartered bank in the U.S. state of Georgia. The contract designates Tourprodenter as AFA's "collection agent."

13. Mr. Tofoni seeks AFA's compliance with the contract and damages for AFA's breaches. Mr. Tofoni maintains that the 2021 Contract is a valid, fully executed contract that



complies with all requirements of the Argentine Civil and Commercial Code. It was signed by Mr. Tofoni, as well as Claudio Tapia, the president of AFA, and Pablo Toviggino, as secretary general of AFA, both of whom confirmed their authority to bind AFA in the 2021 Contract. The 2021 Contract specifically indicates that it does not require any additional approvals.

14. AFA responded to the complaint by requesting the dismissal of Mr. Tofoni's claims on the basis that the 2021 Contract is invalid. AFA asserts that the 2021 Contract was not signed by Mr. Tapia or Mr. Toviggino. AFA further asserts that neither Mr. Tapia nor Mr. Toviggino had the authority to bind AFA, and that approval by AFA's Executive Committee was required, but not obtained.

**Status of the Argentine Proceeding**

15. The Argentine proceeding was commenced with the filing of Mr. Tofoni's complaint on November 3, 2023. AFA responded to the complaint on August 2, 2024.

16. At a preliminary hearing held on July 5, 2025, Mr. Tofoni requested that the court bifurcate the evidentiary stage of the proceeding, first addressing the evidence to determine the existence and validity of the 2021 Contract, and then subsequently addressing the evidence to prove the damages. AFA opposed the request. The court took the matter under advisement, and the parties are awaiting a decision as to how the case will proceed.

17. Regardless of whether the court decides to bifurcate the evidentiary stage of the proceeding, Mr. Tofoni will now have to obtain and develop the evidence in support of his claim so that it can be used at trial, including by attending the hearings for witness declarations, preparing expert witness reports (for example, by accountants), requesting information and/or documentation in the possession of third parties, demanding recognition of documents by AFA and third parties, and other types of evidentiary presentations.

**The Need for this Application**

18. Through this Application, Mr. Tofoni seeks information regarding payments

made to AFA, or to third parties on behalf of AFA, in relation to friendly matches that were organized in breach of the 2021 Contract. Mr. Tofoni has certain limited information regarding specific transactions, and he believes that additional transactions will likely be revealed through discovery. In addition, Mr. Tofoni seeks information regarding the nature of the various third parties that were or may have been used to collect payments on behalf of AFA, including Prosport Live LLC, Tourprodenter, Wintec Enterprise LLC ("Wintec"), and Global FC LLC ("Global FC"). This latter information will help Mr. Tofoni to trace funds collected in breach of the 2021 Contract.

19.  In addition to the transaction described in paragraph 12 above, in which Tourprodenter acted as "collection agent" to receive a payment of US$ 7 million for a friendly match in China, Mr. Tofoni has limited information regarding additional transactions that I describe below. He seeks discovery regarding these and other similar transactions.

20.  According to a March 1, 2024 contract between AFA and 4E International Ltd ("4E International"), a Malaysian company, regarding sponsorship of the Argentine men's national soccer team through friendly and other matches, AFA again designated Tourprodenter as AFA's "collecting agent." In connection with this contract, Tourprodenter was to be paid US$ 2.88 million through a Citibank, N.A. account that it owned.

21.  The same contract also designed Global FC, a Florida company as "collecting agent" for AFA. The contract provided for a payment of US$ 1.62 million by 4E International to Global FC's account at JPMorgan Chase Bank, N.A. Banking instructions indicate that the payment originated from a company called Hong Kong Xunni Trading Co., Limited.

22.  AFA also collected payments in connection with these friendly matches through Wintec, a Florida company. In connection with two friendly matches in September 2022, one in Miami and another in New York, Wintec was paid at least US$ 800,000 by Cardenas Marketing Network, Inc. (also known as Grupo Cardenas, Inc. or "CMN") through a Bank of



America, N.A. account.

23. The evidence that Mr. Tofoni seeks is necessary for two purposes. First, the evidence is necessary for calculating Mr. Tofoni's lost opportunity damages resulting from AFA's breaches. To estimate these damages, Mr. Tofoni requires information on the profit those matches have made in the past. This information would also assist in calculating how much the friendly matches may generate in the future. Without the requested discovery, he does not have the necessary information to make these calculations. This is particularly the case because, as noted above, the Argentine men's national team's matches have become more profitable since the team won the World Cup in 2022 and Messi decided to continue playing. This increase in profitability coincides with the period when AFA began organizing matches in breach of its contract with Mr. Tofoni.

24. Information about payments to AFA by third parties in connection with these friendly matches will provide useful data points to calculate Mr. Tofoni's damages. For instance, one method of calculation would be to add together the profits for the matches organized during the contract period, deduct estimated historical costs, and then calculate the 30% to which Mr. Tofoni was entitled from this final amount.

25. In addition, Mr. Tofoni will need this evidence post-judgment to enforce an award against AFA. As explained above, millions of dollars in AFA profits from these friendly matches were funneled through various third parties. The evidence will assist Mr. Tofoni to trace these funds and other AFA assets so that he may execute a potential judgment against those assets.

26. Because the financial institutions that hold accounts for the third parties used to collect payments are located in the United States, they are outside the jurisdictional reach of the Argentine court.

**The Argentine Court Would Be Receptive to this Discovery**

27.     Argentine law permits a plaintiff to request evidence located outside of Argentina for use in an Argentine proceeding – and Mr. Tofoni's complaint includes such requests – however the request must be granted by the court, and the evidence must be sought through letters rogatory, a lengthy process that can drag on for years.

28.     Section 377 of Argentina's Civil and Commercial Procedural Code imposes the burden of proof on the party invoking a right or a defense so that it must produce evidence in support of its allegations in a commercial dispute such as this one. In my experience, Argentine courts are receptive to evidence that is obtained from other jurisdictions, including through a section 1782 application. In addition, the financial account information that Mr. Tofoni seeks through this Application is the type of information that a plaintiff would ordinarily use to support a commercial claim like his. I do not have any reason to believe that the court in the present proceeding would not be receptive to such evidence. Therefore, evidence obtained through the present Application can be used by Mr. Tofoni in the Argentine Proceeding to support his claims.

**The Requested Discovery**

29.     In light of the foregoing, and in support of the Argentine Proceeding, Mr. Tofoni seeks discovery from: (1) Bank of America Corporation, which is the parent company of Bank of America, N.A.; (2) Citigroup, Inc., which is the parent company of Citibank, N.A.; and (3) JP Morgan Chase Inc., which is the parent company of JP Morgan Chase Bank, N.A. The requested discovery relates to payments made to or for the benefit of AFA in connection with the friendly matches organized in breach of the 2021 Contract; any onward movement of these payments; and the ownership and nature of the third parties that collected payments on behalf of AFA. As explained in paragraphs 12 and 20-22, these Respondents are likely to have responsive documents because their wholly owned subsidiaries held accounts that were used

to collect payments for transactions by AFA that breached the 2021 Contract.

30. As I noted above, Mr. Tofoni seeks from these respondents information that is crucial to the Argentine Proceeding, namely information that will assist him in calculating his damages as a result of AFA's contractual breaches, and information that will assist him to trace funds paid to third parties acting on AFA's behalf for the eventual enforcement of a judgment in the Argentine Proceeding.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 6th day of October 2025

_____
Francisco Castex