**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

IN RE PETITION OF GUILLERMO LUIS
TOFONI FOR JUDICIAL ASSISTANCE
PURSUANT TO 28 U.S.C. § 1782

Case No. 1:25-cv-01217-RGA

### PETITIONER'S OPPOSITION TO TOURPRODENTER LLC'S
### MOTION TO QUASH AND FOR PROTECTIVE ORDER

On October 10, 2025, the Court granted (D.I. 6) the petition of Petitioner Guillermo Tofoni

for authorization to serve subpoenas on respondents Bank of America Corporation, Bank of

America N.A., Citigroup, Inc., and JP Morgan Chase Inc. (the "First Set of Subpoenas") seeking

records to support his claims pending in Argentina (the "1782 Application") against the Argentina

Football Association ("AFA") (D.I. 1). In that proceeding (the "Argentine Civil Proceeding"), Mr.

Tofoni alleges that AFA used various companies, including intervenor Tourprodenter, to breach

its contractual obligations to him and to cause him damages (D.I. 3). Therefore, the subpoenas

served on the banks sought information regarding accounts held by Tourprodenter and these other

entities. At the same time that Mr. Tofoni filed the Section 1782 Application in this Court, he filed

a nearly identical application in the United States District Court for the Middle District of Georgia,

seeking authorization to serve a subpoena on Synovus Bank, which is located there, for the same

purpose.[1]  That application was granted on October 7, 2025.

Mr. Tofoni served the respondent banks beginning on October 10, 2025. By October 21,

2025, the respondent banks began notifying Tourprodenter that its records had been subpoenaed.

---

[1] *In Re Petition of Guillermo Luis Tofoni for Judicial Assistance Pursuant to 28 U.S.C. § 1782*,
Case No. 4:25-cv-00313-CDL (M.D. Ga.)

Despite this notice from the banks in October, Tourprodenter did not contact Mr. Tofoni or seek to intervene in this proceeding at that time. By October 22, 2025, the banks began producing documents, and Bank of America produced documents to Petitioner that revealed additional bank accounts held by Tourprodenter at First-Citizens Bank & Trust Company, PNC Bank, Wells Fargo Bank, and The Bank of New York Mellon. Accordingly, Mr. Tofoni filed a Motion to Reopen this Matter and for Authorization to Issue Additional Subpoenas on January 20, 2026 (D.I. 7), which was granted by this Court on January 21, 2026 (D.I. 9). The additional subpoenas (the "Second Set of Subpoenas") were served on January 22, 2026, and Petitioner is working with the respondent banks to obtain responses.

When Mr. Tofoni reviewed those productions, he realized that they revealed a massive criminal scheme through which individuals associated with AFA appeared to be fraudulently moving, laundering and stealing AFA funds and violating Argentine tax and foreign exchange regulations. Mr. Tofoni believed it appropriate to bring this criminal conduct to the attention of the Argentine authorities by commencing criminal and administrative proceedings, including the Criminal Case No. 66191/2025 ("Argentine Criminal Proceeding"), in Argentina against the relevant individuals, using the information that he had obtained from the respondent banks. *See* Second Declaration of Francisco Castex In Support of Application of Guillermo Luis Tofoni ("Second Castex Declaration"), attached hereto as Exhibit 1, at ¶ 3. There was no confidentiality agreement or protective order in place at the time that would prevent Mr. Tofoni from using the documents for this purpose. Tourprodenter was on notice of this use of its documents in Argentina by December 2025, when the Argentine media began reporting on the criminal scheme. Nevertheless, it was not until March 11, 2026, *five months* after it received notice of the subpoenas and *three months* after it learned that its documents were being used for these purposes, that

Tourprodenter first contacted Mr. Tofoni to request that a protective order be entered in this proceeding.

When counsel for Tourprodenter contacted Mr. Tofoni to meet and confer, Mr. Tofoni advised that he did not oppose Tourprodenter's request to intervene or the entry of a protective order, but he believed that Tourprodenter's proposed protective order was overly broad and that accusations against Mr. Tofoni should be removed from the documents. Counsel therefore provided redlines of the motion to intervene and the proposed protective order so that the parties could proceed on consent. Rather than engaging on those issues, Tourprodenter proceeded to file its motion to intervene with a draft motion to quash and for protective order (D.I. 18).

Mr. Tofoni has three concerns regarding Tourprodenter's proposed protective order. First, because Tourprodenter waited months to seek relief, Mr. Tofoni has already lawfully used the documents received from Synovus outside of the Argentine Civil Proceeding, and information regarding unlawful transactions in Tourprodenter's accounts has been widely reported in the Argentine media. That cannot now be undone. Therefore, Mr. Tofoni vehemently opposes Tourprodenter's proposal to apply the protective order retroactively, so that Mr. Tofoni would be required to claw back documents that were lawfully produced and used. Second, Mr. Tofoni submits that he should be permitted to continue to use the discovery that he has obtained here in other proceedings in Argentina that fall within the scope and purpose of § 1782, such as the now-pending Argentine Criminal Proceeding. There was no restriction on Mr. Tofoni using the discovery for other permissible purposes, and he should not be restricted from continuing to cooperate with the Argentine authorities in pursing charges against the Defendants in that or in any other proceeding permissible under § 1782. Third, language in the protective order that falsely accuses Mr. Tofoni of wrongdoing and serves no other purpose should be removed.

## A.  The Section 1782 Application Was Proper

Tourprodenter incorrectly suggests that nefarious motives led to Mr. Tofoni's filing of this Section 1782 Application. As Mr. Tofoni explained in the Section 1782 Application, he needed information from Synovus Bank in support of his breach of contract claims against AFA, and in particular to assist with calculating damages caused by the breach. Mr. Tofoni was entitled to the exclusive rights to arrange soccer matches for the Argentine National Soccer Team. However, AFA breached the parties' contract and excluded Mr. Tofoni from the arrangement of matches, depriving him of his commissions. The Section 1782 discovery was for the purpose of demonstrating AFA's profits from those matches so that Mr. Tofoni could determine his losses.

Tourprodenter relies on a declaration by the Argentine lawyer Maximiliano Rusconi, who states that he reviewed the case file "through the Judicial Case Management System—LEX 100—and did not observe that, as of that date, Tofoni had submitted financial documents of Tourprodenter similar to those [subpoenaed in these proceedings]." (D.I. 18, Ex. 1 at 41 ¶ 9). From this review alone he concludes that Petitioner must not have really intended to use the section 1782 discovery for that proceeding. Mr. Rusconi's assumption is unfounded. That case is ongoing, and it is not currently in the appropriate procedural posture for Mr. Tofoni to use the discovery. *See* Second Castex Declaration at ¶ 2. It remains Mr. Tofoni's intention to use this information, which, as stated in the 1782 Application, is valuable to him in calculating his damages. *Id*.

In any case, even if Mr. Tofoni did not ultimately use the section 1782 discovery in the Argentine Civil Proceeding, that would not invalidate his request for relief. There is no requirement that section 1782 discovery be used in a foreign proceeding, the only requirement is that it can be used. *Weber v. Finker*, 554 F.3d 1379, 1385 (11th Cir. 2009) ("Section 1782 does not require that every document discovered be actually used in the foreign proceeding. Quite the

4

opposite … The Magistrate Judge did not err by granting discovery 'for context,' when such discovery is allowed under Rule 26(b)(1)."). While Mr. Tofoni still intends to use the documents discovered, there are myriad reasons why such discovery might not immediately or ultimately be used as evidence in a foreign proceeding.

### B. The Section 1782 Discovery Was Properly Used in the Argentine Criminal Proceeding

The documents that Mr. Tofoni received through the 1782 Application revealed a massive criminal scheme that he believed appropriate to bring to the attention of Argentine authorities by filing criminal proceedings against the relevant parties. In Argentina, as in other civil law jurisdictions, an individual complainant may commence and participate in criminal proceedings, including by submitting evidence. Absent a protective order – there was not one – Section 1782 discovery may be used in separate proceedings, including the now pending Argentine Criminal Proceeding. *See In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 135 (2d Cir. 2017) ("Section 1782 does not prevent an applicant who lawfully has obtained discovery under the statute with respect to one foreign proceeding from using the discovery elsewhere unless the district court orders otherwise.").

The Argentine Criminal Proceeding itself would have constituted an independent and proper basis for Section 1782 assistance. The statutory requirements for section 1782 assistance are satisfied with respect to the Argentine Criminal Proceeding: (1) Synovus Bank is found in this District; (2) the discovery would be "for use" in an Argentine tribunal; and (3) Mr. Tofoni is the criminal complainant and has the right to present evidence in the proceeding, making him an "interested person." *See* Second Castex Declaration at ¶¶ 4-5. Courts routinely grant Section 1782 assistance to private complainants involved in criminal proceedings. *See, e.g., In re Selman*, No. CV 23-895-CJB, 2024 WL 1092025 (D. Del. Mar. 13, 2024) (criminal complaint filed in the

criminal court of Santiago, Chile); *In re Bureau Veritas*, No. 5:22-MC-80132-EJD, 2022 WL 3563773 (N.D. Cal. Aug. 17, 2022) (same, in the District of Pinhais, Brazil); *In re: Application*, No. 3:23-MC-00841-AN, 2024 WL 35454 (D. Or. Jan. 3, 2024) (same, in Paraguay); *Campos-Alvarez v. Newmont Mining Corp.*, No. 1:14-CV-00208-REB, 2015 WL 1228262 (D. Colo. Mar. 16, 2015) (same, in Peru).

The *Intel* discretionary factors are also satisfied: (1) Tourprodenter is not itself a party to the Argentine Criminal Proceeding; (2) Argentine criminal courts are receptive to the evidence sought; (3) no Argentine rule on proof-gathering is circumvented; and (4) the request targeted a clearly defined and limited category of documents, as previously found by this Court. *See* D.I. 6; *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004).

The information obtained through discovery in this proceeding revealed facts that gave rise to a criminal complaint in Argentina. Mr. Tofoni was entitled to use this information for that purpose, and should be permitted to continue to do so. *See Glock v. Glock, Inc.*, 797 F.3d 1002, 1007–08 (11th Cir. 2015) ("[N]othing precludes [a party] from using that evidence in a wholly separate lawsuit … even though she would not have had those documents to use in the second case had she not lawfully received them as discovery in the first case."). While Mr. Tofoni does not object to the entry of an appropriate protective order, such protective order should permit Mr. Tofoni to use the documents produced here in connection with  any proceeding in Argentina that falls within the scope and purpose of § 1782.

### C. There is No Basis for Retroactive Application of the Protective Order

Tourprodenter's request for retroactive relief is inappropriate under the circumstances of this case. Tourprodenter knew months ago that its bank records had been subpoenaed, produced, and used, but it made a strategic decision not to object. There is no legal basis for retroactive relief

now. *See Webb v. Butler,* No. 5:18-CT-3127-FL, 2021 WL 10364882, at *2 (E.D.N.C. Sept. 14, 2021), aff'd, No. 21-7441, 2023 WL 2597604 (4th Cir. Mar. 22, 2023) (declining to issue a retroactive protective order where plaintiff waited over five months before seeking a ruling on a motion for protective order). The lawful use of the discovery produced by Synovus cannot be undone, and the burden that Tourprodenter's proposed claw back provisions would put on Mr. Tofoni is unwarranted. The court should reject paragraph 10 of Tourprodenter's proposed protective order.

### D. Tourprodenter's Accusations Should be Removed From the Protective Order

Paragraphs 2 and 10 of Tourprodenter's proposed protective order improperly embed unfounded accusations of misconduct that serve no other purpose. Paragraph 2 asserts a need "to prevent misuse or public dissemination" of materials, and paragraph 10 proceeds from the premise that Mr. Tofoni has disclosed Tourprodenter's information to unauthorized persons, despite the undisputed fact that no protective order or use restriction existed. These sections should also be removed from the protective order.

### E. The Court Should Enter Mr. Tofoni's Proposed Protective Order

Consistent with counsel's position during the meet and confer efforts process, Mr. Tofoni does not oppose entry of a protective order that addresses Tourprodenter's confidentiality concerns on a prospective basis, eliminates accusatory language, and allows Mr. Tofoni to continue to use the discovery in legal proceedings in Argentina. Accordingly, Mr. Tofoni submits herewith a proposed protective order that serves all of these interests. For the Court's convenience, counsel has included a redlined version of the proposed protective order as Exhibit 2, reflecting all changes to Tourprodenter's proposal.

### F. The Scope of the Subpoenas is Proper

Tourprodenter's assertion that the subpoenas are facially overbroad and untethered to the Argentine Civil Proceeding is largely moot and also inaccurate. Most of the banks have already complied and did not complain about burden. Mr. Tofoni alleges that AFA used Tourprodenter and other affiliated entities as vehicles to receive payments for friendly matches that should have been organized under Mr. Tofoni's exclusive contract. Because this alleged wrongdoing involves third-party "front companies" and potentially commingled accounts, the only practical way to establish that the transactions relate to AFA and the disputed matches is to review account-level records, including transaction histories, KYC and onboarding materials, and signatory information.

Tourprodenter's intent to limit discovery to transactions already known to involve AFA is unworkable because the subpoenas are directed to third-party banks, not to Tourprodenter itself. The banks have no ability to assess the commercial purpose of individual transactions or to determine which transfers are "AFA-related"; they can only locate and produce the account records they maintain in the ordinary course of business. Furthermore, the banks are unable to create new documents reflecting only "AFA-related" transactions - again, they must produce documents as they are ordinarily kept. Requiring Tofoni to further narrow the subpoenas to identify relevant payments beforehand would be impractical and improper, and would effectively require Mr. Tofoni to establish the facts he seeks to discover before obtaining the evidence needed to do so, and it would place an untenable burden on the banks subject to subpoena. Under these circumstances, the subpoenas requested pursuant to Mr. Tofoni's *Ex Parte* Motion to Reopen Matter and for Authorization to Issue Additional Subpoenas are neither unduly intrusive nor overbroad, but instead represent a proportionate and reasonably calculated means of obtaining necessary financial evidence.

## CONCLUSION

For the foregoing reasons, Tourprodenter's motion should be denied to the extent that the proposed protective order applies retroactively, includes accusations against Mr. Tofoni, prohibits Mr. Tofoni's use of the discovery in other legal proceedings in Argentina , and seeks to quash the pending subpoenas. The Court should instead grant Mr. Tofoni's  proposed protective order, which is filed contemporaneously herewith.

**STEVENS & LEE, P.C.**

*/s/ Melissa N. Donimirski*
Melissa N. Donimirski (# 4701)
919 North Market Street, Suite 1300
Wilmington, DE 19801
(302) 654-5180
melissa.donimirski@stevenslee.com

*Counsel for Petitioner*
*Guillermo Luis Tofoni*

Dated: April 7, 2026

9